UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID TOMS, individually and
on behalf of all others similarly situated,

    Plaintiffs,

v.                                          Case No: 8:21-cv-0736-KKM-JSS

STATE FARM LIFE INSURANCE
COMPANY,

    Defendant.
_____

## ORDER

Plaintiff David Toms, individually and on behalf of all others similarly situated, brings claims for breach of contract, conversion, and declaratory relief against Defendant State Farm Life Insurance Company, arguing that State Farm violated the express terms of his life insurance policies by collecting excess monthly charges. (Doc. 1.)

State Farm moves for partial judgment on the pleadings as to the conversion and declaratory relief claims while choosing to leave the breach of contract claims "for another day." (Doc. 49.) Because the conversion and declaratory relief claims are duplicative of the breach of contract claims and the conversion claim fails in the absence of specific, identifiable money, State Farm's motion is granted.

I. **BACKGROUND**[1]

Toms purchased two flexible premium adjustable whole life insurance policies (the Policies) from State Farm in 2003. (Doc. 1 ¶ 10.) In addition to a death benefit, each of the Policies provides its owner with an "Account Value," which is described as "a savings, or interest-bearing, component." (*Id.* ¶ 2, 19.) The Account Value is comprised of "the property of the policy owner and is held in trust by" State Farm. (*Id.* ¶ 21.)

The policy owners make "premium payments" monthly from which State Farm deducts a "premium expense charge"—five percent of each premium payment. (*Id.* ¶ 24.) The remaining "premium dollars are deposited into the Account Value." (*Id.* ¶ 20.) Separate from the premium expense charge, the Policies also authorize State Farm "to make periodic deductions from policy owners' Account Values." (Doc. ¶ 37.) Specifically, the Policies provide for a "Monthly Deduction" that includes three components: first, "the cost of insurance" charge (COI Charge); second, "the monthly charges for any riders"; and third, "the monthly expense charge." (*Id.* ¶ 28.) The Policies state that the monthly expense charge is five dollars. (*Id.* ¶ 29.)

The Policies state that the COI Charge is calculated each month using the "Monthly Cost of Insurance Rates" (COI Rates), which account for several actuarial factors

---

[1] In reviewing a motion for judgment on the pleadings, the Court accepts the facts in the Complaint as true and views them in the light most favorable to Toms, the nonmoving party. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

generally related to the demographics of the insured. (*Id.* ¶ 31.) The COI Rates "for each policy year are based on the [i]nsured's age on the policy anniversary, sex, and applicable rate class," and "[s]uch rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates." (*Id.*)

According to Toms, under the explicit terms of the Policies, State Farm "is authorized to determine monthly Cost of Insurance Rates for each policy year using *only* the [i]nsured's age, sex, applicable rate class, and projected changes in mortality." (*Id.* ¶ 33 (emphasis added).) But State Farm allegedly uses "other factors, not authorized by the Policies" when determining the COI Rates, including "profit and expenses," which inflate the COI Charges. (*Id.* ¶ 39.) The result, according to Toms, is that State Farm withdraws excess COI Charges from the Account Values in "repeated[] and continuous[]" breach of the Policies. (*Id.* ¶ 43.)

The Complaint includes two breach of contract claims (Counts I and II). In Count I, Toms alleges that State Farm breached the Policies by using excessive COI Rates in calculating the monthly deductions. (*Id.* ¶¶ 62–63.) In Count II, Toms alleges that State Farm breached the Policies by inflating the expressly authorized fixed expense charges by improperly including "cost of insurance" expenses in its calculations of those rates. (*Id.* ¶¶ 66–67.) The Complaint also includes a conversion claim (Count III), in which Toms alleges that State Farm improperly deducted "funds" from his Account Values "in excess of

3

the amounts permitted" by the Policies. (*Id.* ¶ 70.) Finally, Toms brings a declaratory judgment claim (Count IV), (*id.* ¶¶ 80–81), and includes a request for punitive damages, (*id.* ¶ 83).

State Farm moves for judgment on the pleadings on the claims for conversion (Count III) and declaratory relief (Count IV) and asks that the Court strike the request for punitive damages. (Doc. 49.) Toms opposes the motion. (Doc. 50.) With the Court's leave, State Farm replied. (Doc. 55.)

## II. LEGAL STANDARD

"Judgment on the pleadings is appropriate when no issues of material fact are raised in the pleadings and the movant is entitled to judgment as a matter of law." *Jones v. NordicTrack, Inc.*, 236 F.3d 658, 660 (11th Cir. 2000). "A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). Thus, to survive a motion for judgment on the pleadings, the complaint must contain "enough facts to state a claim for relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing a motion for judgment on the pleadings, a court must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

## III. ANALYSIS

State Farm argues that the conversion claim fails on the pleadings because there is no alleged deprivation of specific, identifiable money and the conversion claim duplicates the breach of contract claims. State Farm also argues that the declaratory relief claim fails because it also duplicates the breach of contract claims such that it serves no useful purpose. The Court agrees.

### A. Conversion (Count III)

Under Florida law, conversion is "an unauthorized act which deprives another of his property." *Nat'l Union Fire Ins. Co. of Pa. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985) (quoting *Senfeld v. Bank of Nova Scotia Trust Co. (Cayman)*, 450 So. 2d 1157, 1160–61 (Fla. 3d DCA 1984)). The claimant must establish "possession or an immediate right to possession of the converted property at the time of conversion." *United States v. Bailey*, 419 F.3d 1208, 1212 (11th Cir. 2005). Demand and refusal are not necessary "where the act complained of amounts to a conversion regardless of whether a demand is made." *Goodrich v. Malowney*, 157 So. 2d 829, 832 (Fla. 2d DCA 1963).

Two limitations on Florida conversion claims are relevant here. And both apply to bar Toms's conversion claim.

First, when a conversion claim involves money, it requires "proof that the funds are specific and identifiable." *Tambourine Comercio Internacional SA v. Solowsky*, 312 F.

5

App'x 263, 272 (11th Cir. 2009); *see Cutler v. Voya Fin., Inc.*, No. 18-cv-20723, 2018 WL 4410202, at *4–6 (S.D. Fla. Aug. 23, 2018) (Torres, Mag. J.), adopted by 2018 WL 7627867 (S.D. Fla. Oct. 26, 2018) (dismissing with prejudice a similar conversion claim involving allegations that insurer deducted unauthorized cost of insurance charges). "Money is capable of identification where it is delivered at one time, by one act and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit, or where wrongful possession of such property is obtained." *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1970); *see Gasparini v. Pordomingo*, 972 So. 2d 1053, 1056 (Fla. 3d DCA 2008) ("For money to be the object of conversion 'there must be an obligation to keep intact or deliver the specific money in question, so that money can be identified.'" (quotation omitted)). The purpose of the identification requirement is to ensure that a contract dispute is not being transformed into a conversion claim. *Tambourine*, 312 F. App'x at 272 (citing *Allen v. Gordon*, 429 So. 2d 369, 371 (Fla. 1st DCA 1983)).

Here, Toms alleges that State Farm deducted "unauthorized amounts from [his] Account Values . . . and misappropriated or misapplied specific funds placed in [State Farm's] custody . . . without authorization or consent." (Doc. 1 ¶ 71.) Toms does not allege that State Farm converted either (1) money delivered at one time and in one mass or (2) specific and identifiable money. *See Belford Trucking*, 243 So. 2d at 648. Instead,

6

Toms alleges that State Farm converted a percentage of his monthly premiums that he paid over multiple years. *See Cutler*, 2018 WL 4410202, at *4 (noting that "the money was obviously not paid at once" like "Florida law requires"); *see Francois v. Gulf Coast Transp., Inc.*, No. 8:16-cv-1061, 2016 WL 4097108, at *4 (M.D. Fla. Aug. 2, 2016) (Bucklew, J.) (dismissing conversion claim where the money was not "a one-time payment" by the plaintiff). Nor does Toms allege that the money State Farm converted was unique (i.e., specific and identifiable). The long-term nature of the premium payments and the lack of a specific location for the money (e.g., a trust account or a specific fund) undermines Toms's claim that the money is readily identifiable. *See Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541 (11th Cir. 1990) (affirming the district court which held that the plaintiffs had not established a conversion claim by merely asserting that the defendant held commissions which the plaintiff was entitled to under the contract).

Other federal courts have determined that similar allegations of improper deductions from long term insurance premium payments cannot support a conversion claim under Florida law because the money is not identifiable nor delivered at one time and in one mass. *See, e.g., Cutler*, 2018 WL 4410202, at *5; *Patel v. Catamaran Health Sols., LLC*, No. 15-cv-61891, 2016 WL 5942475, at *11 (S.D. Fla. Jan. 14, 2016) (Bloom, J.); *Kee*, 918 F.2d at 1541.

Toms argues his conversion claim is based on specific and identifiable money because the Complaint alleges that the "terms of [his] life insurance policies provide for an 'Account Value' consisting of monies held in trust by [State Farm]." (Doc. 1 ¶ 2; *see id.* ¶¶ 19–22); *see also Allen v. Gordon*, 429 So. 2d 369, 371 (Fla. 1st DCA 1983) (conversion claim proper where plaintiff sought specific amount of money that represented the entire balance of two accounts at issue). But here, there are no allegations establishing that State Farm "had an obligation to hold specific deposits of money on behalf of [Toms] for withdrawal at some future date." *See Cutler*, 2018 WL 4410202, at *4. Rather, the premiums Toms paid toward his Policies "were credited to" the Policies' Account Value. *Id.* Unlike in *Allen*, the allegations do not establish that the Account Value is an actual, physical fund where State Farm is holding Toms's specific money. *See In re Gen. Plastics Corp.*, 158 B.R. 258, 287 (Bankr. S.D. Fla. 1993) (conversion requires that "the very dollars delivered or deposited are due and returnable to the plaintiff"). Thus, Toms's conversion claim fails for the primary reason that it is not based on specific and identifiable money.

Second, a conversion claim "is not an appropriate means of vindicating a claim which essentially alleges a breach of contract." *Misabec Mercantile, Inc. de Pan v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.*, 853 F.2d 834, 838 (11th Cir. 1988); *accord Advanced Surgical Technologies, Inc. v. Automated Instruments, Inc.*, 777 F.2d

8

1504, 1507 (11th Cir. 1985). As such, where there is a contractual relationship between the parties, the "conversion must go beyond, and be independent from, a failure to comply with the terms of a contract." *Gasparini*, 972 So. 2d at 1055–56. In other words, a conversion claim may lie between two parties with a contractual relationship "if the alleged conversion exists *independently* of an alleged failure to perform contractual duties." *1021018 Alberta Ltd. v. Netpaying, Inc.*, No. 8:10-cv-568, 2011 WL 1103635, at *4 (M.D. Fla. Mar. 24, 2011) (Whittemore, J.) (emphasis added).

Whereas Florida law requires that a conversion claim between contractually related parties "go beyond" and "be independent of" the breach of contract claims, Toms's conversion claim simply mirrors his breach of contract claims. *Gasparini*, 972 So. 2d at 1055–56; *see Misabec Mercantile*, 853 F.2d at 838; *Cutler*, 2018 WL 4410202, at *5. The same conduct—State Farm's alleged past and ongoing breaches of the Policies—underlies both Toms's breach of contract and his conversion claims. *See Cutler*, 2018 WL 4410202, at *5. As such, Toms's conversion claim "improperly arises out of [State Farm's] alleged contractual obligation[s]." *Patel*, 2016 WL 5942475, at *11. The Complaint clearly defines the conversion claim with reference to the breach of contract allegations. (*See* Doc. 1 ¶ 70 (defining the allegedly converted funds as the amounts in "excess of the amounts permitted by the terms of the Policies").) Importantly, Toms never identifies any duty State Farm owed him except contractual duties that arise out of the Policies. Therefore, the Court

9

concludes that Toms's conversion claim is also barred because it is dependent on his breach of contract claims.

Other federal courts faced with nearly identical conversion claims have echoed this conclusion. *See Cutler*, 2018 WL 4410202, at *4–5; *see also Jaunich v. State Farm Life Ins. Co.*, No. 20-cv-1567, 2020 WL 6712219, at *2 (D. Minn. Nov. 16, 2020) (Magnuson, J.) (same conclusion under analogous Minnesota law); *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495, 513 (N.D. Cal. 2021) (Breyer, J.) (same conclusion under analogous California law).

Because Toms's conversion claim fails to allege he was deprived of specific, identifiable money and is duplicative of his breach of contract claims, State Farm is entitled to judgment on the pleadings as to Toms's conversion claim. And given that no independent tort claims remain following the dismissal of Toms's conversion claim, the Court also strikes Toms's punitive damages request from his Complaint. *See Lewis v. Guthartz*, 428 So. 2d 222, 223 (Fla. 1982) ("It is now a well-settled rule in Florida that punitive damages are not recoverable in a breach of contract action, absent an accompanying independent tort.").

### B. Declaratory Relief (Count IV)

The Court has substantial discretion to decide whether to consider a declaratory relief claim. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942

F.3d 1215, 1229 (11th Cir. 2019). A district court should dismiss a declaratory relief claim where it "will serve no useful purpose." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). One such instance of no useful purpose arises where a declaratory relief claim mirrors a breach of contract claim. *See Golfview Motel, Inc. v. Scottsdale Ins. Co.*, No. 2:20-cv-831, 2020 WL 7127127, at *1 (M.D. Fla. Dec. 4, 2020) (Chappell, J.); *accord Mena Catering, Inc. v. Scottsdale Ins. Co.*, 512 F. Supp. 3d 1309, 1322–23 (S.D. Fla. 2021) (Bloom, J.). In short, where the resolution of a breach of contract claim will resolve the issues presented by a declaratory relief claim, courts decline to entertain the declaratory relief claim. *See Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1376 (S.D. Fla. 2019) (Ruiz, J.) (collecting cases).

Toms's declaratory relief claim repeats his breach of contract claims. Both his breach of contract claims and his declaratory relief claim seek a ruling that State Farm has and continues to breach the Policies by impermissibly deducting from the authorized Account Values each month. (*Compare* Doc. 1 ¶ 80, *with* Doc 1 ¶¶ 61, 66 (detailing the same contractual theories of liability to support the declaratory relief and the breach of contract claims).) A ruling on the breach of contract claims, therefore, would necessarily resolve the declaratory relief claim.

Toms argues his declaratory relief claim is useful because it is forward looking. (Doc. 50 at 17.) True, forward looking declaratory relief claims may be useful where the

11

accompanying breach of contract claims are retroactive in nature (i.e., based on past conduct). *See Mena Catering*, 512 F. Supp. 3d at 1322. But Toms's breach of contract claims allege ongoing breaches of the Policies, meaning that, if Toms succeeds on his breach of contract claims, all breaches up to the entry of a judgment on his contract claims would be remedied. As such, no "useful purpose" is served by prospective declaratory relief.

Toms also argues that the declaratory relief claim is useful because it will add value at class certification and because it provides a predicate for injunctive relief. (Doc. 50 at 17–18.) However, resolution of the breach of contract class claims would also resolve the declaratory relief class claims and injunctive relief is available for a continuing breach of contract where there is no adequate remedy at law. *See Barnes v. Gorman*, 536 U.S. 181, 187–88 (2002) (citing RESTATEMENT (SECOND) OF CONTRACTS § 355 (1981)).

Because the declaratory relief claim duplicates the breach of contract claims and Toms "will be able to secure full, adequate, and complete relief through the breach of contract claim[s]," *Ministerio Evangelistico Int'l v. United Specialty Ins. Co.*, No. 16-cv-25313, 2017 WL 1363344, at *2 (S.D. Fla. Apr. 5, 2017) (Moreno, J.), the Court grants judgment on the pleadings to State Farm on Toms's declaratory relief claim as well.

IV. **CONCLUSION**

Accordingly, the following is **ORDERED:**

1. Defendant's Motion for Judgment on the Pleadings (Doc. 49) is **GRANTED**.

2. Plaintiff's conversion (Count III) and declaratory relief (Count IV) claims are **DISMISSED with prejudice**. In the absence of any remaining tort claims, the Clerk is directed to **STRIKE** Plaintiff's punitive damages request.

**ORDERED** in Tampa, Florida, on July 14, 2022.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge