UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID TOMS,

     Plaintiff,

v.                                                                Case No: 8:21-cv-736-KKM-JSS

STATE FARM LIFE INSURANCE
COMPANY,

     Defendant.

_____/

## ORDER

Defendant State Farm Life Insurance Company renews its motion to seal documents filed in connection with Plaintiff's Motion for Class Certification (Dkt. 60), Defendant's Opposition to Class Certification (Dkt. 83), and Defendant's Motion to Exclude the Testimony of Scott Witt (Dkt. 84). (Renewed Motion to Seal, Dkt. 96.) Plaintiff opposes the Renewed Motion to Seal (Dkt. 99). The court held a hearing on July 8, 2022. (Dkt. 113.) For the reasons set forth below, the Renewed Motion to Seal is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Plaintiff filed his class action complaint on March 26, 2021, asserting claims arising from the purchase of life insurance policies from Defendant. (Dkt. 1, ¶¶ 10, 49.) Defendant answered the complaint and asserted affirmative defenses on May 26, 2021. (Dkt. 21.)

On September 13, 2021, the court entered a Stipulated Protective Order, which allows the parties to designate as "CONFIDENTIAL," information including any "trade secret, [] commercial [], or any other personal information of any Party or Party's customer, provided that the Party or third-party has made efforts to maintain confidentiality that are reasonable under the circumstances . . . ." (Dkts. 44, 43-1 ¶ 2.2.) The protective order allows a party to challenge a confidentiality designation "at any time," provided that delay does not impose an undue burden or disruption. (*Id.* ¶ 6.1.) In October 2021, Defendant produced to Plaintiff a number of the documents at issue in the Renewed Motion to Seal, and designated them as "CONFIDENTIAL" pursuant to the protective order. (Dkt. 96 at 10–11.)

On January 28, 2022, Plaintiff filed his Motion for Class Certification and, with the court's leave, filed under seal certain attachments to that motion. (Dkt. 60.) Specifically, Plaintiff filed ten documents in partially or fully redacted form removing information that Plaintiff claimed Defendant had sought to seal in parallel litigation. (Dkt. 61 at 1, 2–3.) Plaintiff noted that these documents were "the subject of detailed testimony in open court at the trial in *Vogt v. State Farm Life Insurance Company*, 16-4170-CV-NKL (W.D. Mo. [filed June 15, 2016]), and many of the at-issue documents and information were publicly disclosed and admitted into evidence as trial exhibits in that public proceeding." (*Id.* at 2 n.1.) On February 11, 2022, Defendant moved to seal these documents. (Dkt. 69.) Plaintiff opposed that motion. (Dkt. 70.)

On April 15, 2022, before the court ruled on Defendant's initial motion to seal, Defendant made four filings with the court. First, Defendant moved to seal, in whole

or in part, 15 documents filed in connection with Defendant's forthcoming Opposition to Plaintiff's Motion for Class Certification and Defendant's Motion to Exclude the Testimony of Plaintiff's Expert Scott Witt.  (Dkt. 82.)  Second, Defendant filed its response in opposition to Plaintiff's Motion for Class Certification in redacted form. (Dkt. 83.)  Third, Defendant filed its Motion to Exclude the Testimony of Plaintiff's Expert Scott Witt in redacted form.  (Dkt. 84.)  Finally, Defendant filed a Notice of Filing Documents in Support, which included placeholders or redactions for those documents that Defendant had sought leave to seal.  (Dkt. 85.)  Plaintiff opposed Defendant's second motion to seal, arguing in large part that the information had already been publicly disclosed.  (Dkt. 87.)

On April 27, 2022, the court held a hearing on Defendant's initial motion to seal.  (Dkt. 89.)  At the hearing, the court ordered Defendant to submit a renewed motion to seal that consolidated both of its previously filed motions (Dkts. 69, 82). (Dkt. 89.)  The court also ordered Defendant to submit unredacted copies of the documents proposed to be sealed for *in camera* review, which Defendant thereafter did.

On May 13, 2022, Defendant filed its Renewed Motion to Seal, seeking leave to seal, in whole or in part, 21 documents.  (Dkt. 96.)[1]  Specifically, Defendant seeks leave to seal, in whole or in part,[2] the following documents:

---

[1] In light of Defendant's Renewed Motion to Seal, the court terminated Defendant's previously filed motions to seal.  (Dkt. 97.)  Additionally, with the Renewed Motion to Seal, Defendant represented that it had reached agreement with Plaintiff to unseal certain documents that were part of its original sealing requests.  (Dkt. 96-3.)  As such, those documents are not part of this order.
[2] Defendant seeks to completely seal six of these documents and redact portions of the remaining 15 documents.  (Dkt. 96 at 18–19.)

| Documents submitted with Plaintiff's Motion for Class Certification | |
|---|---|
| Declaration and Report of Plaintiff's Expert Scott Witt, dated January 26, 2022 | Originally filed at Dkt. 60-1; Defendant submitted a proposed redacted version at Dkt. 76-3 |
| Excerpts from the Transcript of the Deposition of State Farm Employee Carl Streily on November 7, 2017 | Dkt. 60-6 |
| State Farm Life Insurance Company Actuarial Memorandum for Form 94030, Flexible Premium Adjustable Life Benefit, New Jersey (the New Jersey Actuarial Memorandum) | Originally filed at Dkt. 60-8; Defendant submitted a proposed revised redacted version to the court with the Renewed Motion to Seal |
| Universal Life Actuarial Memorandum for Form 94030-40, South Carolina (the South Carolina Actuarial Memorandum) | Originally filed at Dkt. 60-9; Defendant submitted a proposed revised redacted version to the court with the Renewed Motion to Seal |
| Excerpts from the Transcript of the Deposition of State Farm 30(b)(6) Designee Jeffrey Holzbauer on November 30, 2017 | Dkt. 60-10 |
| State Farm Email re: Mortality Assumption Documentation dated October 4, 2001 | Dkt. 60-11 |
| State Farm Life Insurance Company Actuarial Memorandum, Forms 94030-30, 64126-30, 94124-30, Flexible Premium Adjustable Life Benefit | Originally filed at Dkt. 60-12; Defendant submitted a proposed revised redacted version at Dkt. 76-2 |
| Excerpts from the Transcript of the Deposition of State Farm 30(b)(6) Designee Alan "Rusty" Hendren on November 30, 2017 | Dkt. 60-13 |
| State Farm email re: VUL Illustration examples | Dkt. 60-14 |
| February 28, 2018 Declaration of State Farm Employee Jeffrey Holzbauer | Dkt. 60-15 |

| Documents submitted with Defendant's Opposition to Plaintiff's Motion for Class Certification (Dkt. 83) and with Defendant's Motion to Exclude the Testimony of Scott Witt (Dkt. 84) | |
|---|---|
| Defendant's Motion to Exclude the Testimony of Scott Witt with redaction | Dkt. 84 |
| Excerpts from the Transcript of the March 29, 2022 Deposition of Plaintiff David Toms | Placeholder filed at Dkt. 85-1, Exhibit 1 (document not filed on the public docket) |
| Excerpts from the Transcript of the Deposition of Scott Witt on February 17, 2022 with redaction | Dkt. 85-1, Exhibit 7 |
| Excerpts from the Transcript of the Deposition of Tony Phipps on December 8, 2017 with redaction | Dkt. 85-1, Exhibit 8 |
| Declaration and Report of Lauren J. Stiroh, PH.D., dated April 15, 2022 with redaction | Dkt. 85-2 |
| Declaration and Expert Report of Craig Reynolds, FSA, MAAA, dated April 14, 2022 | Dkt. 85-5 |
| Reference Binder of Alan Hendren | Placeholder filed at Dkt. 85-10, Exhibit A (document not filed on the public docket) |
| State Farm's 1992 Expense Study Report | Placeholder filed at Dkt. 85-10, Exhibit C (document not filed on the public docket) |
| Table of State Farm's mortality experience date from 1988-1991 | Placeholder filed at Dkt. 85-10, Exhibit E (document not filed on the public docket) |
| State Farm's 1994 Life Ratebook | Placeholder filed at Dkt. 85-10, Exhibit M (document not filed on the public docket) |
| State Farm's Cost Index Illustrations submitted to Florida Department of Insurance in 1993 | Placeholder filed at Dkt. 85-10, Exhibit O (document not filed on the public docket) |

With the Renewed Motion to Seal, Defendant submitted a declaration from Defendant's Actuarial Director Jeffrey Holzbauer summarizing the asserted proprietary and confidential information contained within each document. (Dkt. 96-1) (Holzbauer Decl.)  Defendant also submitted a declaration by Defendant's counsel Jeremy Root, which provided information regarding the extent to which each document had been previously publicly disclosed. (Dkt. 96-2) (Root Decl.)  Plaintiff filed an opposition to Defendant's Renewed Motion to Seal on May 26, 2022. (Dkt. 99.)  On June 22, 2022, Defendant filed a reply in further support of its Renewed Motion to Seal. (Dkt. 109.)  The court held a hearing on July 8, 2022 (Dkt. 113).

## APPLICABLE STANDARDS

Middle District of Florida Local Rule 1.11 governs the filing of documents under seal in a civil case.  Under Local Rule 1.11(c), a party seeking to file any paper or other matter under seal if not authorized by a statute, rule, or order: (1) must include in the title "Motion for Leave to File Under Seal"; (2) must describe the item proposed for sealing; (3) must state the reason: (A) filing the item is necessary, (B) sealing the item is necessary, and (C) partial sealing, redaction, or means other than sealing are unavailable or unsatisfactory; (4) must propose a duration of the seal; (5) must state the name, mailing address, email address, and telephone number of the person authorized to retrieve a sealed, tangible item; (6) must include a legal memorandum supporting the seal; but (7) must not include the item proposed for sealing.  No order

sealing any item shall extend beyond 90 days after a case is closed and all appeals exhausted.  M.D. Fla. Local R. 1.11(f).

In addition to Local Rule 1.11, the Eleventh Circuit recognizes that there is a "presumptive common law right to inspect and copy judicial records." *United States v. Rosenthal*, 763 F.2d 1291, 1293 (11th Cir. 1985) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–99 (1978)); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001).  Where material is "filed in connection with any substantive pretrial motion, unrelated to discovery, [it] is subject to the common law right of access," which includes the right to inspect and copy public records and documents.  *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007).  Indeed, while district courts "have discretion to determine which portions of the record should be placed under seal, [such] discretion is guided by the presumption of public access to judicial documents."  *Perez-Guerrero v. U.S. Attorney Gen.*, 717 F.3d 1224, 1235 (11th Cir. 2013).

The public's right of access however, "is not absolute" and the presumption of access "may be overcome by a showing of good cause," taking into consideration the public's interest in accessing court documents and the party's interest in keeping the information confidential.  *Romero*, 480 F.3d at 1245–46 (citing *Chicago Tribune Co.*, 263 F.3d at 1309).  "[W]hether good cause exists . . . is . . . decided by the nature and character of the information in question."  *Id.* at 1246 (quoting *Chicago Tribune Co.*, 263 F.3d at 1315).  In balancing the competing interests of the public's right of access and the party's interest in maintaining confidentiality,

courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Id.* (citing *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir.1987)).  A party can establish good cause by showing that disclosure will cause "a clearly defined and serious injury."  *Nguyen v. Raymond James & Assocs., Inc.*, No. 8:20-cv-195-CEH-AAS, 2022 WL 61198, at *4 (M.D. Fla. Jan. 6, 2022) (quoting *Digital Assurance Certification, LLC v. Pendolino*, No 6:17-cv-72-CEM-TBS, 2017 WL 320830, at *2 (M.D. Fla. Jan. 23, 2017)).  In particular, "[a] party's privacy or proprietary interest in information sometimes overcomes the interest of the public in accessing the information."  *Romero*, 480 F.3d at 1246 (citing *Nixon*, 435 U.S. at 598).

## ANALYSIS

Having reviewed the parties' briefing on this matter and supporting documentation (both as part of the Renewed Motion to Seal and the prior motions to seal), having heard oral argument from counsel at two hearings, and having reviewed the documents that Defendant seeks to seal *in camera*, the court finds that based on the nature and character of the information in question, Defendant has demonstrated good cause to file some of the documents under seal.

### I.     Requirements of Local Rule 1.11

Initially, the court notes that Defendant's Renewed Motion to Seal satisfies the requirements imposed by Local Rule 1.11(c).  The Renewed Motion to Seal is

designated as such pursuant to Local Rule 1.11(c)(1), contains a legal memorandum supporting the request to seal as required by Local Rule 1.11(c)(6), and does not include the items proposed for sealing as required by Local Rule 1.11(c)(7). It, along with the Holzbauer and Root Declarations attached as exhibits, describe the items to be sealed as required by Local Rule 1.11(c)(2), and explain why the filing and sealing of the items is necessary and why partial sealing, redaction, or other means is unavailable for some of the documents as required by Local Rule 1.11(c)(3). Finally, the Renewed Motion to Seal proposes that the information remain under seal for at least 90 days after the case is closed and all appeals are exhausted as required by Local Rule 1.11(c)(4), and provides the name, mailing address, email address, and telephone number of counsel authorized to retrieve sealed information as required by Local Rule 1.11(c)(5).

## II. Presumptive Common Law Right of Access

Defendant seeks to seal documents that have been filed or are proposed to be filed in connection with Plaintiff's Motion for Class Certification (Dkt. 60), Defendant's Opposition to Plaintiff's Motion for Class Certification (Dkt. 83), and Defendant's Motion to Exclude the Testimony of Plaintiff's Expert Scott Witt. (Dkt. 84.) As these documents are proposed to be filed with the court in connection with "substantive pretrial motion[s] unrelated to the discovery," they are subject to the presumptive common law right of access. *Romero*, 480 F.3d at 1245 (citing *Chicago Tribune Co.*, 263 F.3d at 1311); *see, e.g.*, *Grant v. Regal Auto. Grp., Inc.*, No. 8:19-cv-363-SDM-JSS, 2022 WL 1081566, at *1 (M.D. Fla. Apr. 11, 2022) (considering documents

submitted in connection with motion to certify class under presumption of public access); *Nguyen*, 2022 WL 61198, at *4 (requiring good cause to overcome presumption of public access for documents submitted with motion for class certification, opposition to motion for class certification, and related *Daubert* motions). Defendant may therefore overcome the presumption of public access only "by a showing of good cause, which requires 'balanc[ing] the asserted right of access against [Defendant's] interest in keeping the information confidential.'" *Romero*, 480 F.3d. at 1246 (quoting *Chicago Tribune Co.*, 263 F.3d at 1309).[3]

## III.   Good Cause Overcoming the Right of Access

Within the 21 documents at issue, Defendant seeks to seal what it claims to be its confidential business information and trade secrets, as well as the personal information of its policyholders. (Dkt. 96 at 1.) On review, the court finds that Defendant has demonstrated good cause to seal some of the requested documents.

---

[3] Defendant argues that Plaintiff has waived any ability to challenge its having designated the documents as "CONFIDENTIAL" pursuant to the protective order, by failing to challenge that designation in a timely manner after the documents were produced in October 2021. (Dkt. 96 at 10–12.) However, the court notes that the protective order in this case allows the parties to challenge confidentiality designations "at any time" and Plaintiff's challenging of the designation here has not imposed an undue burden on Defendant. (Dkt. 43-1 ¶ 6.1.) In any event, the parties' designation of information as confidential pursuant to the protective order is not relevant to whether Defendant has made the requisite showing to seal the documents. *See Reed v. CRST Van Expedited, Inc.*, No. 8:17-cv-199-T-27CPT, 2018 WL 5077179, at *2 (M.D. Fla. Apr. 17, 2018) ("The parties' mutual agreement to keep documents confidential or to seal materials is 'immaterial' to a court's decision regarding the public's right of access.") (quoting *Brown v. Advantage Eng'g*, 960 F.2d 1013, 1016 (11th Cir. 1992); *Entrust Datacard Corp. v. Zeiser GmbH*, No. 3:17-cv-110-J-39MCR, 2019 WL 12522657, at *2 (M.D. Fla. Feb. 15, 2019) ("Although 'a stipulated protective order may provide that documents designated confidential are presumptively protected, a party's calling a document confidential pursuant to a protective order 'does not make it so' when it comes to filing the document with the court.'") (quoting *Joao Bock Transaction Sys., LLC v. Fid. Nat. Info. Servs., Inc.*, No. 3:13-cv-223-J-32JRK, 2014 WL 279656, at *1 (M.D. Fla. Jan. 24, 2014)).

Initially, in weighing the Eleventh Circuit's factors, the court finds that allowing access to the documents would not impair the judicial function, but would harm the legitimate privacy interests of Defendant, as discussed below.  There is no suggestion that Plaintiff will not be afforded an opportunity to respond to the information should it be placed under seal, and indeed the parties appear to have engaged in similar litigation with the same or similar information under seal.  *See* (Root Decl., ¶¶ 20–31.) There is further no challenge to the reliability of the information, nor is there an assertion that the information concerns public officials or public concerns.  *See, e.g., United States v. Lee Mem'l Health Sys.*, No. 2:14-cv-437-FTM-38CM, 2018 WL 5014534, at *11 (M.D. Fla. Oct. 16, 2018) (denying motion to seal in part where requested information "involves matters of particular concern to the public, such as allegations of fraud against the government").[4]

### A. Defendant has sufficiently demonstrated that a clearly defined and serious injury would result from disclosure of its confidential business information and trade secrets.

The parties' disagreement largely centers on whether Defendant has demonstrated a "clearly defined and serious injury" that would result from disclosure of the documents.  Among the Eleventh Circuit's factors, the parties dispute whether the disclosure will harm the legitimate privacy interests of Defendant and the degree of and likelihood of any such injury.  Plaintiff argues that Defendant cannot establish

---

[4] However, the court notes that as is the case here, "in class actions – where by definition 'some members of the public are also parties to the [case]' – the standards for denying public access to the record 'should be applied . . . with particular strictness.'"  *Reed*, 2018 WL 5077179, at *1 (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016)).

any injury from disclosure of the documents because they have already been publicly disclosed in separate proceedings, specifically at the trial in *Vogt v. State Farm Life Ins. Co.*, 16-cv-4170-NKL (W.D. Mo. filed June 15, 2016) (the *Vogt* Matter).  Upon review of the parties' arguments and submissions, the court finds that, with the exception of the documents noted below, Defendant has sufficiently demonstrated a clearly defined and serious injury that would result from disclosure of the documents.

Defendant argues that good cause exists to seal the documents in whole or in part because the documents reflect its protectable trade secrets and proprietary information.  (Dkt. 96 at 5–9.)  In particular, Defendant claims that the documents reflect inputs into its pricing process and the method by which those inputs are used to generate pricing.  (*Id.*)  Defendant avers that although the particular universal life policy at issue here is no longer sold, the "pricing assumptions and related information [contained within the documents] remain confidential and competitively valuable," because "competitors in the insurance market [may] seek to entice [Defendant's] customers into surrendering their policy for a different product that the competitor may offer." (Holzbauer Decl., ¶ 5.)  Defendant argues that because of the competitive nature of the market for life insurance, it closely maintains the confidentiality of the information it seeks to seal, including its "confidential, actuarial information about its experience with insureds, including its mortality experience, persistency experience, expense experience, profit goals, mix of business, and other sensitive information that is relevant to [Defendant's] pricing of life insurance products."  (Dkt. 96 at 6.)  Defendant further argues that although its "general pricing process" has been

consistently disclosed, its "detailed process," which reflects the "actual methodology and process by which these inputs are used to develop the actual prices charged to policyholders is proprietary and competitively sensitive." (*Id.* at 8–9.)

Defendant identifies several categories of confidential, competitively valuable information that are contained within the documents.  For example, Defendant states that its mortality experience data was developed through "analysis of multiple years of mortality experience across a vast population of insureds," and would allow a competitor "to re-price or even develop their own product specifically to compete with [Defendant's] universal life products." (Holzbauer Decl., ¶ 14.)  Defendant's persistency data reflects data generated by "carefully analyzing its population of insureds," and is "competitively valuable because analysis of this data is required to price and reprice life insurance policies." (Holzbauer Decl., ¶ 9.)  If a competitor gained access to Defendant's "persistency data," the competitor "would be privy to highly proprietary information that would enable the competitor to target [its] customer base." (Dkt. 96 at 7 (citing Holzbauer Decl., ¶ 10).)  Defendant's "expense data" similarly reflects "the careful and specific analysis [that Defendant's] actuaries perform every year," and disclosure "would be potentially harmful to [Defendant's] competitive position" because "competitors could . . . try and replicate [Defendant's] policies and rates and target [Defendant's] customers." (Holzbauer Decl., ¶ 12.)  Defendant further represents that its "commission scale" is "relied upon and taken into consideration by [Defendant's] actuaries when developing pricing and re-pricing recommendations" and if disclosed, could allow competitors "to undercut

[Defendant's] competitive advantage by seeking to entice successful agents away from [Defendant] with the promise of higher commissions. . . ."  (Holzbauer Decl., ¶ 13.) Defendant further argues that if a competitor gained access to its "current or historic actual cost of insurance rates, the competitor would be able to develop a competing product at a purportedly lower cost."  (Dkt. 96 at 7 (citing Holzbauer Decl., ¶ 7).)

The court finds that these representations are sufficient to show a "clearly defined and serious injury" should this information be disclosed, such that Defendant has demonstrated good cause to overcome the presumption of public access to some of the documents.  For these proposed sealed documents, Defendant has provided descriptions of the proposed redacted content that relate to one or more of the above categories of competitively sensitive information, including the specific data inputs themselves or the method or means by which Defendant uses that data.  (Holzbauer Decl., 20.)  These representations are sufficient to demonstrate that Defendant would suffer harm to its business and its position related to competitors in the insurance market, should the information be filed publicly.  *See, e.g.*, *Nolen v. Wyndham Vacation Resorts, Inc.*, No. 6:20-cv-330-PGB-EJK, 2021 WL 3036460, at *2 (M.D. Fla. June 15, 2021) ("Courts in this District have recognized that maintaining the privacy of confidential business information can constitute good cause for keeping documents from the public view."); *Barkley v. Pizza Hut of Am., Inc.*, No. 6:14-cv-376-ORL37DAB, 2015 WL 5915817, at *3 (M.D. Fla. Oct. 8, 2015) (finding sufficient showing to justify sealing of deposition transcript that contained "confidential information regarding Defendant's business operations as well as confidential and competitively sensitive

- 14 -

information" and expert report containing "data and analysis . . . which Defendant's competitors could use . . . to undercut" its position).

### B. Any disclosure of information in the *Vogt* Matter does not preclude Defendant's ability to demonstrate harm from disclosure.

Plaintiff argues that Defendant has waived its ability to assert confidentiality over proprietary business information contained within the documents because "[p]ublication of those materials in open court operated as a waiver of any rights [Defendant] has to restrict [their] future use." (Dkt. 99 at 4) (internal marks and citations omitted). Specifically, Plaintiff identifies two categories of documents that Defendant seeks to seal but that have been previously publicly disclosed. First, Plaintiff argues that several of the documents, including deposition transcripts and portions of declarations, contain information that was presented in open court at the trial in the *Vogt* Matter, and is presently publicly available by review of the *Vogt* trial transcript. *See, generally* (Dkt. 99 at 7–11.) Second, Plaintiff argues that Defendant has waived confidentiality over any documents that were actually admitted into evidence at the trial in the *Vogt* Matter, which although not presently available, were the subject of detailed testimony in the *Vogt* Matter. *Id.*[5]

Defendant does not dispute that the following documents were admitted as exhibits in the *Vogt* Matter:

---

[5] Plaintiff's counsel also argued that a there was a third category of documents that have not been publicly disclosed, but for which Defendant had failed to make a satisfactory showing as to a clearly defined and serious injury. However, as discussed above, the court finds that Defendant has made the requisite showing of injury to warrant sealing as to those documents.

| | |
|---|---|
| Excerpts from the Transcript of the Deposition of State Farm Employee Carl Streily on November 7, 2017 | Dkt. 60-6 |
| State Farm Life Insurance Company Actuarial Memorandum for Form 94030, Flexible Premium Adjustable Life Benefit, New Jersey (the New Jersey Actuarial Memorandum) | Originally filed at Dkt. 60-8; Defendant submitted a proposed revised redacted version to the court with the Renewed Motion to Seal |
| Universal Life Actuarial Memorandum for Form 94030-40, South Carolina (the South Carolina Actuarial Memorandum) | Originally filed at Dkt. 60-9; Defendant submitted a proposed revised redacted version to the court with the Renewed Motion to Seal |
| Excerpts from the Transcript of the Deposition of State Farm 30(b)(6) Designee Jeffrey Holzbauer on November 30, 2017 | Dkt. 60-10 |
| State Farm Life Insurance Company Actuarial Memorandum, Forms 94030-30, 64126-30, 94124-30, Flexible Premium Adjustable Life Benefit | Originally filed at Dkt. 60-12; Defendant submitted a proposed revised redacted version at Dkt. 76-2 |

However, Defendant argues that "[a]ll of the State Farm information that is the subject of [the Renewed Motion to Seal] is nonpublic and is either (1) competitively sensitive confidential information, proprietary to State Farm; or (2) private information belonging to State Farm policyholders." (Root Decl., ¶ 5.) Defendant argues that the facts and circumstances of the disclosure at trial in the *Vogt* Matter, including any discussion of the materials in open court, do not warrant a denial of its request to seal here. (Dkt. 96 at 12–18.) Defendant argues that it undertook measures, both at the trial in the *Vogt* Matter, in its appeal, and in several post-*Vogt* cases to keep

these documents confidential. (Root Decl., at 2–10.) Specifically, Attorney Root avers that having acted as trial counsel for Defendant in the *Vogt* Matter:

> I monitored the audience at the trial in this case, which was conducted in Jefferson City, Missouri. To the best of my knowledge and recollection, no members of the press or any person not associated with the Court, the jury, or the parties or the counsel attended the trial. In particular, no insurance competitors or media representatives were present in the courtroom. The trial was not live streamed.

(Root Decl., ¶ 10.)[6] Defendant further avers that it "carefully reviewed the [*Vogt* trial] transcript and moved to redact any reference to State Farm's trade secret information, including the only reference in the transcript to State Farm's trade secret formulae and actuarial analysis." (Root Decl., ¶ 11.) Defendant also argues that pursuant to the local rules in the Western District of Missouri, all exhibits were withdrawn from the court within 14 days after the conclusion of proceedings and are thus no longer publicly available. (Dkt. 96 at 15; Root Decl., ¶ 13.) Defendant further states that the portions of those exhibits that it seeks to seal here are not part of the currently available *Vogt* trial transcript. (Root Decl., ¶¶ 32.b., 32.c., 32.d., 32.e., and 32.g.)

Based on the "nature and character of the information in question," *Romero*, 480 F.3d at 1246, the court finds that the disclosure of certain information at the *Vogt* trial, including admitting certain documents as exhibits and testimony about those exhibits and other information, does not preclude Defendant's ability to establish a

---

[6] In a separate declaration, Attorney Root provided additional detail that the only persons present at the trial were: "1) the court and court personnel; 2) the jury; 3) the parties and their employees; 4) counsel and their agents; 5) experts bound by a protective order; and 6) one lawyer's parents." (Dkt. 82-2 at 4.)

clearly defined and serious injury were those documents to be filed on the public docket today.

The court recognizes that in certain circumstances, the publication of information at trial may preclude a party from seeking protection from disclosure post-trial. *Hepp v. Paul Revere Life Ins. Co.*, No. 8:13-cv-2836-T-17TBM, 2015 WL 4072101, at *4 (M.D. Fla. July 2, 2015) (finding no good cause to seal exhibits that had been introduced in open court where exhibits had been "disseminated to lawyers and litigants across the country" and post-trial request to seal the exhibits remained pending); *Kleiman v. Wright*, No. 18-cv-80176, 2022 WL 59676, at *2 (S.D. Fla. Jan. 6, 2022) (finding no good cause to seal exhibits that "were either discussed at length or introduced in open court during the widely publicized trial in this matter"). However, the cases finding a waiver of confidentiality based on a prior, public disclosure are distinguishable. The trial does not appear to have been widely publicized, and the exhibits that were admitted or displayed at trial are no longer publicly available. Defendant avers that it took steps both post-trial, and on appeal, to maintain the confidentiality of the documents, including reviewing and redacting the publicly available trial transcript for information that it deemed to be confidential and proprietary. (Dkt. 96 at 15.)

Courts routinely grant post-trial requests to seal exhibits and testimony to prevent broad dissemination *after* the information has been presented in open court. *See, e.g.*, *NXP B.V. v. BlackBerry Ltd.*, No 6:12-cv-498-Orl-22TBS, 2014 WL 4059135, at *4 (M.D. Fla. Aug. 15, 2014) (granting request to seal portions of the trial transcript

and certain admitted trial exhibits on the grounds that they contain confidential and proprietary information where the parties "assert that disclosure of the information they seek to protect, beyond what has already occurred in open court during trial, would be harmful to them and the interests of non-parties"); *Deltona Transformer Corp. v. Noco Co.*, No. 6:19-cv-308-CEM-LRH, 2021 WL 4443999, at *1 (M.D. Fla. June 21, 2021) (finding good cause to grant post-trial sealing of admitted exhibits "in anticipation of the Court making the trial exhibits in this case publicly available on the docket") (collecting cases). Notably, the district court in the *Vogt* Matter granted a post-trial motion to file the New Jersey Actuarial Memorandum (Dkt. 60-8) under seal even after it was admitted into evidence and referred to in trial testimony. (Dkt. 96-2, Exhibit B.) Thus, the court most familiar with the proceedings at the trial in the *Vogt* Matter did not consider that the memorandum's introduction into evidence and the subsequent testimony included in the trial transcript waived the right of any party to seek to file it under seal on the public docket thereafter.[7]

Further, over the last several years, the parties have repeatedly sought and received protection from disclosure for the same or similar documents in various other matters, irrespective of any disclosure at trial in the *Vogt* Matter. (Root Decl., ¶ 9.) *See, e.g., Bally v. State Farm Life Ins. Co.*, No. 3:18-cv-04954 (N.D. Cal.), ECF Nos. 65,

---

[7] The court further notes that although Plaintiff argues that the Streily and Holzbauer video deposition excerpts were played for the jury in the *Vogt* trial, (Dkt. 70 at 8), the *Vogt* trial transcript, reflects only notations indicating the deposition was played, and not the content of those depositions. *See* (Dkt. 60-25 at 247 (notations indicating "Video deposition testimony of Carl Streily, Plaintiffs' Exhibit No. 246, was played for the jury." and "Video deposition testimony of Jeffrey Holzbauer, Plaintiffs' Exhibit No. 247, was played for the jury.").)

69, 96, 238-01, 256, 272, 273; *Whitman v. State Farm Life Ins. Co.*, No. 3:19-cv-06025 (W.D. Wash), ECF Nos. 123, 124; *Page v. State Farm Life Ins. Co.*, No. 5:20-cv-00617 (W.D. Tex.), ECF No. 107; *McClure v. State Farm Life Ins. Co.*, No. 2:20-cv-01389 (D. Ariz.), ECF Nos. 84, 86; *Jaunich v. State Farm Life Ins. Co.*, No. 0:20-cv-01567 (D. Minn.), ECF No. 155; *Singh v. State Farm Life Ins. Co.*, No. 3:21-cv-00190 (D. Or.), ECF No. 46.  While Plaintiff argues that prior courts have merely "rubber stamped" sealing requests in similar litigation (Dkt. 70 at 12), the court is unpersuaded.  *Whitley Steel Co. v. Nat'l Bank of Com.*, No. 3:19-cv-81-J-34JBT, 2019 WL 11504417, at *1 (M.D. Fla. Sept. 30, 2019) (a reviewing court "is duty bound 'to review any request to seal the record (or part of it) [and] may not rubber stamp a stipulation to seal the record'") (citation omitted).

Thus, the court finds that Defendant has demonstrated good cause to seal some of the documents here, irrespective of any disclosure at trial in the *Vogt* Matter, because of the serious harm to Defendant's business and competitive position that would result if this information were public.  *See, e.g.*, *Barkley*, 2015 WL 5915817, at *3; *Deltona Transformer Corp.*, 2021 WL 4443999, at *1 (sealing trial exhibits reflecting plaintiff's "internal business operations, financials, customer information, competitive strategy, business decisions of the parties, and internal decision making-process").

### C. Defendant established good cause to seal personal identifying information of its policyholders.

Defendant also argues that certain portions of the documents should be sealed because they contain the personal identifying information of Defendant's

policyholders, including of Plaintiff. (Dkt. 96 at 9–10.) These include the following three documents submitted with Defendant's Opposition to Plaintiff's Motion for Class Certification and Motion to Exclude the Testimony of Scott Witt:

| Excerpts from the Transcript of the March 29, 2022 Deposition of Plaintiff David Toms | Placeholder filed at Dkt. 85-1, Exhibit 1 (document not filed on the public docket) |
| --- | --- |
| Declaration and Report of Lauren J. Stiroh, PH.D., dated April 15, 2022 with redaction | Dkt. 85-2 |
| Declaration and Expert Report of Craig Reynolds, FSA, MAAA, dated April 14, 2022 | Dkt. 85-5 |

The court finds that Defendant has demonstrated good cause to seal this information as well.

Defendant seeks to seal portions of the transcript of the March 29, 2022 deposition of Plaintiff Toms (Dkt. 85-1, Exhibit 1), which Plaintiff previously designated as confidential. (Root Decl., ¶ 32.n.) Defendant relies on Plaintiff's description of the information as being Plaintiff's and his family's confidential health information and their home address. (Dkt. 86 at 4.) Plaintiff agrees that this information should be sealed. (*Id.*) Having reviewed this information *in camera*, the court finds good cause to seal the personal identifying and confidential health information contained within the March 29, 2022 Deposition of Plaintiff Toms. *See* (Dkt. 59 (granting request to seal similar information).)

Defendant also seeks to seal insurance policy numbers contained within two exhibits: the Declaration and Report of Lauren J. Stiroh, PH.D. (Dkt. 85-2); and the

Declaration and Report of Craig Reynolds, FSA, MAAA. (Dkt. 85-5.) Plaintiff argues that Defendant should not be allowed to redact "bare policy numbers" from either of these exhibits. (Dkt. 99 at 11–12.) However, upon reviewing the portions sought to be redacted *in camera*, the court finds that redaction of the policy numbers is appropriate, as those numbers are referenced along with the ages, gender, personal habits, or financial information of the policyholders. *See, e.g.*, (Dkt 85-2 at 23.) Defendant argues that these numbers should be filed under seal "to ensure that these policyholders (and the insureds) cannot be connected to the private information that is also disclosed." (Dkt. 109 at 5.) The court agrees and grants Defendant's request to seal those portions of the Stiroh and Reynolds Declarations that contain insurance policy numbers. *See Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2014 WL 6611006, at *3 (M.D. Fla. Nov. 21, 2014) (noting that "the personal identifying information of third parties deserves protection").

### IV. Lack of Good Cause to Seal Duplicative, Non-Confidential Information

Having reviewed the parties' submissions in detail, including the unredacted exhibits submitted by Defendant for *in camera* review, the court finds that Defendant has failed to establish good cause for the proposed redaction or total sealing of three documents.

Defendant seeks to seal portions of the deposition transcript for the November 7, 2017 deposition of Defendant's employee Carl Streily. (Dkt. 60-6.) Plaintiff argues that portions of this document that Defendant seeks to seal reflect only the contents of

the New Jersey Actuarial Memorandum (Dkt. 60-8) that Defendant does not seek to seal from the memorandum itself.  (Dkt. 99 at 7.)

Upon review, Plaintiff's point is well-taken.  To the extent that Defendant seeks to redact from the Streily Deposition Transcript, questions or answers that simply identify or recount content from the New Jersey Actuarial Memorandum that Defendant does not seek to redact from memorandum itself, Defendant is directed to revise its proposed redactions such that those portions will not be redacted.  *See, e.g.*, (Dkt. 60-6 at 141:23–143:8.)  To the extent that the transcript reflects Mr. Streily's analysis of or impressions of any such information, including the questions sought to elicit that testimony, the court finds that Defendant has made the requisite showing of good cause for those portions to be filed under seal.

The court finds that Defendant's proposed redactions of Mr. Holzbauer's November 30, 2017 deposition transcript (Dkt. 60-10) are also overbroad.  As above, to the extent that Defendant seeks to redact from this document, questions or answers that simply identify or recount information that Defendant does not seek to redact from the New Jersey Actuarial Memorandum itself, Defendant is directed to revise its proposed redactions to reveal those portions.  *See, e.g.*, (Dkt. 60-10 at 73:15–74:3.)  To the extent that the transcript reflects Mr. Holzbauer's analysis of or impressions of any such information, including the questions sought to elicit that testimony, the court finds that Defendant has made the requisite showing of good cause for those portions to be filed under seal.

Finally, Defendant seeks to seal, in full, a State Farm email regarding VUL Illustration examples, which Defendant describes as a "December 7, 2014 internal State Farm email wherein State Farm discusses in detail the specific process it uses to input various expense and mortality assumptions into the pricing process and the potential alternatives to that process State Farm was assessing at the time." (Dkt. 60-14; Holzbauer Decl., ¶ 20.h.)  Defendant states that this email has never been made public.  (Root Decl., ¶ 32.i.)

Having reviewed the email *in camera*, the court does not find good cause to seal this email in full, as Defendant has failed to establish that a less onerous alternative to sealing in full is not available.  In particular, the court sees no reason why the redaction of this email should not mirror the redaction of the other internal email at issue here. *See* (Dkt. 60-11.)  Specifically, while the content of the emails in this chain may reflect Defendant's confidential information that is worthy of protection, the court finds that the email fields reflecting the senders, recipients, subject lines, and dates of the emails on this chain do not.  This is especially true given that Defendant itself has revealed at least part of this information in support of its Renewed Motion to Seal. *See* (Holzbauer Decl., ¶ 20.h. (revealing date and subject line of email).)  Thus, Defendant is directed to submit a revised redacted version of this email chain that redacts the content of the emails, but does not redact the email fields reflecting the senders, recipients, subject lines, and dates of the emails on this chain.

Accordingly, it is **ORDERED**:

1.   Defendant's Renewed Motion to Seal (Dkt. 96) is **GRANTED in part** and **DENIED in part**.

2.   The Renewed Motion to Seal is denied as to Defendant's request to seal the following documents:

     a.   Excerpts from the Transcript of the Deposition of State Farm Employee Carl Streily on November 7, 2017 (Dkt. 60-6);

     b.   Excerpts from the Transcript of the Deposition of State Farm 30(b)(6) Designee Jeffrey Holzbauer on November 30, 2017 (Dkt. 60-10); and

     c.   State Farm email re: VUL Illustration examples (Dkt. 60-14).

     Defendant is directed to submit revised redacted versions of these documents to Plaintiff in accordance with this order for filing in support of Plaintiff's Motion for Class Certification (Dkt. 60).  The Clerk is directed to accept under seal the unredacted versions of these documents.

3.   The Renewed Motion to Seal is granted with respect to all other documents.  The parties are directed to publicly file redacted versions of the remaining documents in support of Plaintiff's Motion for Class Certification (Dkt. 60), and Defendant's Response to Plaintiff's Motion for Class Certification (Dkt. 83) and Motion to Exclude the Testimony of Scott Witt (Dkt. 84), as consistent with the most recent redacted versions submitted to the court for *in camera* review as part of its

resolution of the Renewed Motion to Seal.  The Clerk is further directed to accept under seal the unredacted versions of these documents.

4.      The documents shall remain under seal for 90 days after the case is closed and all appeals are exhausted.  M.D. Fla. Local Rule 1.11(f).

**ORDERED** in Tampa, Florida, on July 26, 2022.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record