### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DAVID TOMS, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.                                      Case No: 8:21-cv-0736-KKM-JSS

STATE FARM LIFE
INSURANCE COMPANY,

     Defendant.
_____

### ORDER

Plaintiff David Toms moves to certify a class in this breach of contract action against Defendant State Farm Life Insurance Company relating to State Farm's series 94030 Universal Life insurance policies. (Doc. 60.) State Farm opposes that motion, (Doc. 83), and moves to exclude the testimony of Toms's expert, Scott Witt, (Doc. 84). After considering the motions and the record, the Court denies State Farm's motion to exclude Witt's testimony and grants Toms's class certification motion.

## I.  BACKGROUND

Form 94030 (the Policy) is a universal life insurance policy providing a death benefit and an Account Value. (Doc. 60-1 at 12–13.) The Account Value is "a savings, or interest-

bearing, component" and is "the property of the policy owner" though it is "held in trust by" State Farm. (Doc. 1 ¶¶ 2, 19, 21.) The Policy details how the Account Value is calculated. It provides that net premiums are deposited in the Account Value (after State Farm takes 5%) and the Account Value then earns interest and is subject to a Monthly Deduction comprised of the cost of insurance charge ("COI Charge") and a separate $5.00 "monthly expense charge." (Doc. 60-1 at 16–19.)

The Policy states that COI Charges are calculated using cost of insurance rates ("COI Rates") that "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and "[s]uch rates can be adjusted for projected changes in mortality." (Doc. 60-3 at 14.) According to Toms, under the explicit terms of the Policies, State Farm "is authorized to determine monthly COI Rates for each policy year using *only* the [i]nsured's age, sex, applicable rate class, and projected changes in mortality." (Doc. 1. ¶ 33 (emphasis added).) But State Farm uses "other factors, not authorized by the Policies" when determining the COI Rates, including "profit and expenses," which inflates the COI Charges. (*Id.* ¶ 39.) The alleged result is that State Farm withdraws excess COI Charges from the Account Values in "repeated[] and continuous[]" breach of the Policies.

In sum, Toms claims that State Farm's use of COI Rates to recoup undisclosed expenses and profits instead of COI Rates determined using only the factors listed in the

Policy is unlawful. (Doc. 1.) And he alleges that the "loaded" COI Rates result in overcharges to Account Values for all the prospective class members. (*Id.*) In his class action Complaint, Toms initially alleged two breach of contract claims, a conversion claim, and a declaratory relief claim against State Farm. (*Id.*) But on a motion for partial judgment on the pleadings from State Farm, (Doc. 49), this Court dismissed the conversion and declaratory relief claims, leaving only the two breach of contract claims. (Doc. 116.)

The first breach of contract claim (Count I) alleges that State Farm should have used COI Rates for each policy year based only on "the factors enumerated in the policy"— namely, "the Insured's age on the policy anniversary, sex, and applicable rate class." (Doc. 1 ¶ 33.) The second breach of contract claim (Count II) alleges that State Farm cannot use the COI Charge to recover non-mortality expenses because the separate "monthly expense charge" caps the recovery of expenses through any other monthly charge. (Doc. 1 ¶¶ 38–39.)

Toms now moves to certify the following class: "All persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of Florida whose policy was in force on or after January 1, 2022, and who was subject to at least one monthly deduction." (Doc. 60.) State Farm opposes certification, (Doc. 83), and Toms has filed a reply. (Doc. 95.)

In support of class certification, Toms offers the testimony of an expert, Scott Witt. (Doc. 60-1.) Witt is an actuary who provides a methodology for calculation of lost Account Values under Toms's reading of the policies. (Doc. 60-1; Doc. 60-2.) Witt identifies line-by-line the lost Account Value as to each class member. (Doc. 60-21.) State Farm moves to exclude Witt's testimony. (Doc. 84.) Toms opposes the motion. (Doc. 94.)[1]

## II.  LEGAL STANDARDS

A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). Class certification requires that Toms establish each of the four Rule 23(a) requirements—numerosity, commonality, typicality, and adequacy—and at least one Rule 23(b) requirement. FED. R. CIV. P. 23; *see Carriuolo v. Gen. Motors. Co.*, 823 F.3d 977, 981, 984 (11th Cir. 2016). The underlying merits may be considered "only to the extent they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016)

---

[1] State Farm's previous attempts to exclude Witt's testimony and prevent class certification in other parallel cases around the country on behalf of policyholders who were issued policies on Form 94030 have failed. *See, e.g.*, *Vogt v. State Farm Life Ins. Co.*, No. 2:16-cv-4170-NKL, 2018 WL 4937330, at *3–6 (W.D. Mo. Oct. 11, 2018) (Laughrey, J.), *aff'd*, 963 F.3d 753 (8th Cir. 2020); *Bally v. State Farm Life Ins. Co.*, No. 18-cv-4954-CRB, 2022 WL 594798, at *2–3 (N.D. Cal. Feb. 24, 2022) (Breyer, J.); *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 297–300 (N.D. Cal. 2020) (Breyer, J.); *Whitman v. State Farm Life Ins. Co.*, No. 3:19-cv-6025-BJR, 2021 WL 4264271, at *9–10 (W.D. Wash. Sept. 20, 2021) (Rothstein, J.); *Jaunich v. State Farm Life Ins. Co.*, 569 F. Supp. 3d 912, 918 (D. Minn. 2021) (Magnuson, J.); *Page v. State Farm Life Ins. Co.*, No. 20-cv-617-FB, 2022 WL 406415 (W.D. Tex. Feb. 10, 2022) (Chestney, Mag. J.); *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 255–58 (D. Az. 2022) (Brnovich, J.).

(cleaned up and quotation omitted). The Court must conduct a "rigorous analysis" to ensure Toms has met his burden to "affirmatively demonstrate[]" that he has satisfied Rule 23's requirements. *Id.*

Expert testimony is admissible if it is relevant and reliable. *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Qualified experts may give opinions provided that the opinions have (1) a sufficient basis in facts or data, (2) are derived from reliable principles or methods, and (3) are helpful to the jury. *See* FED. R. EVID. 702. The *Daubert* inquiry, therefore, simplifies into three "basic requirements—qualification, reliability, and helpfulness." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004); *see also City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). Because "expert testimony may be assigned talismanic significance in the eyes of lay jurors," the "courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Frazier*, 387 F.3d at 1263. Thus, federal courts act as the "gatekeepers" of expert testimony to ensure experts employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 152 (1999). This gatekeeping function applies not just to scientific testimony but to all expert testimony. *Id.* at 147.

A "full *Daubert* analysis" is required at the class certification stage "when an expert's testimony is critical to class certification." *Local 703, I.B. of T. Grocery & Food Emps.*

*Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1258 n.7 (11th Cir. 2014). As a part of the analysis, the Court must make all the "necessary factual and legal inquires and decide all relevant contested issues prior to certification." *Sher v. Raytheon*, 419 F. App'x 887, 890–91 (11th Cir. 2011) (court erred by "not sufficiently evaluating and weighing conflicting expert testimony on class certification").

## III.   ANALYSIS

Because Toms relies on Witt's expert analysis in his class certification motion, the Court will first consider State Farm's motion to exclude Witt's testimony and then will turn to Toms's class certification motion.

### A.   *Daubert* Motion

State Farm attacks Witt's testimony in four ways. First, State Farm argues Witt's testimony is unreliable. Second, State Farm argues Witt's models do not "fit" with Toms's theories of liability. Third, State Farm argues Witt is not qualified to testify to custom and practice in the life insurance industry. Fourth, State Farm argues Witt's testimony should be excluded under Federal Rule of Evidence 403. These arguments fail.

#### 1.   Witt's Testimony is Sufficiently Reliable

To be admissible, proposed expert testimony must rest on "good grounds"—that is, it must be reliable. *Daubert*, 509 U.S. at 590. *Daubert* mentioned the following four reliability indicators to assess the *scientific* testimony at issue in the case: (1) whether a

technique "can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error" and whether there are controlling standards; and (4) whether there is "general acceptance" of the technique in the "relevant scientific community." *Daubert*, 509 U.S. at 590, 593–94. Importantly though, these factors are "illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." *Frazier*, 387 F.3d at 1262 (quotation omitted). Sometimes the *Daubert*-reliability-indicators will be useful in assessing the reliability of non-scientific testimony as well, but "sometimes other questions may be more useful." *Id.* As a result, trial judges "have considerable leeway" in determining how to assess whether a particular expert's testimony is reliable because "how reliability is evaluated" necessarily varies from case to case. *Id.*

The Court concludes Witt's testimony is sufficiently reliable. Because Witt's testimony is non-scientific and highly specific to the life insurance policy at issue here, the four *Daubert* reliability indicators mentioned above are not helpful in assessing the reliability of Witt's testimony. *See Bally*, 2022 WL 594798, at *3; *Bally*, 335 F.R.D. at 297 ("The subject of Witt's testimony is technical, not scientific, and is highly specific to the insurance policy here. This calls for a more particularized analysis of reliability than rote application of the *Daubert* factors."). For example, the fact that Witt's opinions have not

7

attained general acceptance in the relevant expert community is a function of how uniquely tailored Witt's analysis is to the policies at issue and does not militate in favor of exclusion.

Witt's testimony bears objective indications that it is reliable. *See McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002). Witt's "straightforward methodology" is an arithmetically based, logical application of the formula in the contractual language to identify "the lost account value at a particular point in time." (Doc. 94 at 7.) In its motion to exclude, State Farm does not meaningfully challenge the mechanics of Witt's calculations, and State Farm's own experts have testified in the past that they have "no concerns" about Witt's calculations. *Vogt*, 2018 WL 4937330, at *12. Witt's methodology "*can be* tested and challenged and *has been* tested and challenged by State Farm many times" in the past. *McClure*, 341 F.R.D. at 257. Therefore, State Farm's challenges to the reliability of Witt's testimony fail.

### 2. Witt's Testimony Fits the Facts of the Case

To "assist the trier of fact," the expert testimony must "fit" the facts of the case and "logically advance[] a material aspect of the proposing party's case." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999); *see Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Where an expert's testimony does not "fit" a party's liability theory, it must be excluded. *Boca Raton Cmty. Hosp. v. Tenet Health Care*, 582 F.3d 1227, 1231–32 (11th Cir. 2009).

Before getting to State Farm's specific "fit" challenges, a general description of Witt's methodology is helpful to set the table. To calculate individual damages, Witt has commonly applied the following methodology to every member of the proposed class. (Doc. 60-1; Doc. 60-21.) Using documents from State Farm, Witt first confirms that the COI Rates were calculated by adding pricing mortality rates determined from the factors listed in the policy plus loads for profit and expenses unrelated to those factors. Next, Witt identifies the non-mortality loads by comparing State Farm's pricing mortality rates with the loaded COI Rates it actually used. Finally, using his formula derived from the Policy and transactional data produced for every class member, Witt calculates the lost Account Values resulting from State Farm's conduct. This description details Witt's Count I damages model.

Witt presents two alternative damages models under Count II. The applicable model will depend on the interpretation of the Policy that is adopted by the Court. If the Policy is interpreted to mean that the entire load is an impermissible "expense," then Witt can calculate damages using the same methodology he employs for Count I. Alternatively, if the Policy is interpreted to mean that profit is not considered an expense under Count II, Witt provides a calculation to isolate the other expenses.

State Farm raises multiple challenges to both Witt's Count I damages model and his alternative Count II damages model, arguing that his proposed models do not fit the "facts of the case." *Daubert*, 509 U.S. at 591. These arguments fail to persuade.

### a.  Witt's Count I Damages Model Fits His Liability Theory

State Farm first argues that Witt's methodology fails to "fit" Toms's claims because he determines loads using pricing mortality rates that are not the same as those identified in the Policy. (Doc. 84 at 14.) Not so. Witt's testimony is fully consistent with his Count I liability theory because the Policy-identified mortality factors are used to determine a mortality rate, they are not themselves the mortality rate—a further calculation is required. (Doc. 94 at 9); *Vogt*, 963 F.3d at 761 ("These enumerated factors are so-called 'mortality factors' because they relate to a policyholder's mortality risk, which allows the insurer to determine the projected mortality estimate.").

State Farm next argues that Witt's disregard of tobacco use creates substitute rates that do not fit the facts. (Doc. 84 at 15.) This argument has been repeatedly rejected by courts because "the State-Farm-produced mortality rates that Witt used '*undisputedly did not* distinguish between tobacco users and those who did not use tobacco.'" *Bally*, 335 F.R.D. at 299 (quoting *Vogt*, 2018 WL 4937330, at *5) (emphasis added). This argument relates to the inputs Witt used in his calculations, rather than to his methodology. *See McClure*, 341 F.R.D. at 257. State Farm's own mortality rates that Witt used account for

10

tobacco on a tobacco-blended basis (where tobacco status is considered by distributing tobacco risk across all policies) as opposed to a tobacco-distinct basis (where different rates are applied for tobacco and non-tobacco users). To do as State Farm proposes, Witt would have had to disregard State Farm's use of tobacco-blended pricing mortality to determine the COI Rates.

State Farm further argues that Witt should not have used its pricing mortality rates because they are "unpooled" or "policy-year distinct" (different for insureds who are the same age depending on how long they have held the policy) rather than "pooled" (the same for individuals of the same attained age regardless of how long they have held the policy). This "duration" factor is not a factor listed in the policy—which only includes the temporal factor of "age on the policy anniversary" for "each policy year." (Doc. 84 at 17.) Due to this, State Farm points to multiple instances among the putative class members where Witt's substitute rates were higher than the rates State Farm actually charged (*Id.* at 18.) But again, Witt cannot be faulted for calculating loads relative to mortality rates that State Farm itself used. *See Bally*, 335 F.R.D. at 299; *Whitman*, 2021 WL 4264271, at *9, n.7; *McClure*, 341 F.R.D. at 257. And the fact that State Farm did not overcharge every policyholder in every month does not undermine Witt's opinions either. *See Bally*, 335 F.R.D. at 300 ("The possibility that certain class members may have been undercharged at certain points according to Witt's model does not negatively impact its reliability."); *Vogt*,

11

2018 WL 4937330, at *4 ("An inference that State Farm recoups profits and expenses in the earlier years of the Policy and refrains from doing so later . . . does not indicate a flaw in the damages model; instead, it more likely indicates a calculated business decision."); *see also Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537, 546 (W.D. Tex. 2020).

### b. Witt's Alternative Count II Damages Model Fits His Liability Theory

State Farm advances three main challenges to Witt's alternative Count II damages model. First, State Farm generally argues that Witt's partitioning method underlying his alternative Count II damages model is novel and is not a typical actuarial exercise. (Doc. 84 at 19.) But State Farm admits that it includes expense loads in COI Rates and does not claim to have any spreadsheet or other document that breaks its expense charges out from profit. As Judge Breyer concluded earlier this year, "[t]hese are textbook circumstances for an expert with knowledge of how these types of insurance policies are developed to opine on the extent to which the COI charge included charges to recover expenses." *Bally*, 2022 WL 594798, at *3; *see also McClure*, 341 F.R.D. at 257.

Second, State Farm argues at a more technical level that Witt's alternative Count II damages model incorrectly used State Farm asset share workbooks and that he used the wrong inputs to execute his calculations. (Doc. 84 at 20.) But the issues State Farm raises with the documents Witt relied on and the assumptions that he made "all go to the weight

of the testimony and its credibility, not admissibility." *Bally*, 2022 WL 594798, at *1 ("Witt used the testimony of State Farm's witnesses to identify certain asset share workbooks that provided the best available data that could be used to identify the different components of the cost of insurance rate.") (internal quotations omitted).

Third, State Farm argues that Witt's application of a uniform expense percentage does not work because he does not account for differences in the underlying age, sex, and rate class of the insureds. (Doc. 84 at 22.) But those factors are already accounted for in the pricing mortality component of the COI Rate. Thus, where the overall COI Rate is impacted by the pricing mortality rate component, relative to which Witt (and State Farm) determined the amount of the load, his methodology necessarily incorporates any impact of age, sex, and rate class.

### 3. Witt Is Qualified to Testify to Custom and Practice in the Life Insurance Industry

The inquiry into whether an expert is qualified to testify competently to the matters he tends to address is "not stringent" and, provided "the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (cleaned up and quotation omitted). State Farm's argument that Witt is not qualified to testify to custom and practice in the life insurance industry

fails too. Witt has more than twenty-six years of actuarial experience, including more than sixteen years as a fee-only insurance advisor where he has examined thousands of policies. (Doc. 60-1 at 1–3.) Given this extensive experience, Witt is amply qualified to testify to the type of language that is common in life insurance policies.

### 4.   Rule 403 Does Not Require the Exclusion of Witt's Testimony

Otherwise admissible expert testimony may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." FED. R. EVID. 403; *see Daubert*, 509 U.S. at 595. Exclusion under Rule 403 is an "extraordinary remedy" that is used sparingly. *United States v. Sawyer*, 799 F.2d 1494, 1506 (11th Cir. 1986). Because State Farm fails to establish that the prejudicial effect of Witt's opinions outweighs their probative value—let alone that substantially outweighs it—the Court rejects State Farm's argument that Witt's testimony should be excluded under Rule 403.

For the foregoing reasons, the Court denies State Farm's *Daubert* motion.

### B.  Class Certification Motion

Toms moves to certify a class consisting of "[a]ll persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of Florida whose policy was in force on or after January 1, 2022, and who was subject to at least one monthly deduction" under Federal Rule of Civil Procedure 23(b)(2), 23(b)(3), and/or

23(c)(4). (Doc. 60.)[2] After addressing the four preliminary Rule 23(a) requirements, the Court will address whether Toms has demonstrated the two Rule 23(b)(3) requirements.

## 1.   The Proposed Class Meets Rule 23(a)'s Requirements

Rule 23(a) contains four class-certification requirements: (1) "the class is so numerous that joinder is impracticable"; (2) "there are questions of law or fact common to the class"; (3) the claims or defenses of representative parties are typical of those of the class"; and (4) "the representatives will fairly and adequately protect the interests of the absent class members." FED. R. CIV. P. 23(a). "Failure to establish any one of these four factors and at least one of the alternative requirements of Rule 23(b) precludes class certification." *Valley Drug Co.*, 350 F.3d at 1188.

### a.   Numerosity

Toms easily satisfies the numerosity requirement. More than forty class plaintiffs will usually satisfy the requirement. *Schojan v. Papa Johns Int'l, Inc.*, 303 F.R.D. 659, 663 (M.D. Fla. 2014) (Covington, J.) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). According to State Farm's records, there are over 52,895 Form 94030 policies owned by members of the proposed class. (Doc. 60-1 at 8.)

---

[2] The class does not include: State Farm; any entity in which State Farm has a controlling interest; any of the officers, directors, or sales agents of State Farm and their immediate family; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiff's counsel's firms; any Judge to whom this case is assigned, and his or her immediate family; and persons owning policies that insured males with an issue age of zero and terminated in the first policy year. (Doc. 60 at 1.)

### b. Commonality

He also meets the commonality requirement. "The commonality requirement demands only that there be 'questions of law or fact common to the class.'" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (quoting FED. R. CIV. P. 23(a)(2)). Unlike typicality, which refers to the individual characteristics of the class representative compared to those of the class members, commonality pertains to the characteristics of the group or class as a whole. *See Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001). While most class complaints raise common questions to a certain extent, what matters for class certification is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Schojan*, 303 F.R.D. at 665 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 388, 350 (2011)). Commonality is satisfied if there is a contention "capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Commonality is satisfied here because every class member has the same standardized Policy and State Farm imposes the same set of uniformly determined COI Rates on all class members. (Doc. 60-1 at 7.) In his breach of contract claims, Toms asserts that State Farm's COI Rates violate the Policy's monthly COI Rates and Expense Charge provisions, which results in larger deductions from Account Values than the Policy permits.

The standardized Policy will mean the same thing, one way or the other, for all class members, and common evidence of State Farm's uniform methodology of calculating Account Value deductions will establish whether State Farm is liable to all class members for breach of contract for (1) inflating the COI Charges with undisclosed loads rather than determining COI Rates using only the Policy's listed mortality factors (Count I) and/or (2) deducting expenses through the COI Charge in violation of the $5 monthly Expense Charge (Count II). Even if State Farm is correct in its forthcoming merits argument that its COI Rates did not violate the Policy, (Doc. 83 at 1–2), the claims of all class members would fall together. As such, commonality is satisfied here because there are "questions of law or fact common to the class."

### c.  Typicality

Toms's claims are also typical of the proposed class. Rule 23(a) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). [T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (cleaned up and quotations omitted). As mentioned above, while typicality and commonality are related, the relevant distinction is that "commonality

17

refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza*, 273 F.3d at 1346.

All the putative class members were subject to identical policy language, State Farm performed (and allegedly breached) the Policy in the same way for each class member, and each putative class member was injured in the same way by that conduct. *Cf. Vega*, 564 F.3d at 1276 (concluding no typicality where breach of contract claims involved different underlying contracts with different language); *see Moore v. Am. Fed'n of Television & Radio Artists*, 216 F.3d 1236, 1241–42 (11th Cir. 2000) (doubting the existence of typicality where "the district court would have to examine each [class member's] contract").

### d. Adequacy

Toms meets Rule 23(a)'s adequacy of representation requirement too. That requirement "involves two inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class and (2) whether the representatives will adequately prosecute the action." *Schojan*, 303 F.R.D. at 667 (quotations omitted). "The existence of minor conflicts alone will not defeat a party's claim to class certification." *Id.* Rather, "the conflict must be a fundamental one going to the specific issues in controversy." *Id.* State Farm does not challenge the adequacy of representation here and any such challenge would fail. There is nothing in the record to indicate a conflict of interest between

the class representatives and the class and there is no indication that Toms will not adequately prosecute the action.

### 2. The Proposed Class Meets Rule 23(b)(3)'s Requirements

Rule 23(b)(3) requires (1) that questions of law or fact common to the members of the class predominate over any questions affecting only individual members (predominance) and (2) that a class action is superior to other available methods for fair and efficient adjudication of the controversy (superiority). *See Vega*, 564 F.3d at 1265.

### a. Predominance

To meet the predominance requirement, the "issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989); *see Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and thus "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues."). Even if the court can identify common questions of law or fact such that Rule 23(a)'s commonality requirement is satisfied, Rule 23(b)(3)'s predominance requirement is "far more demanding" and will not necessarily be satisfied. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th

19

Cir. 2000) (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997)).

Rule 23(b)(3)'s first test itself consists of two parts. First, Toms needs to show that common questions of law or fact predominate over individual questions. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34–38 (2013). Here, the "terms of the Policy are the same for all class members [and] State Farm has not suggested that the determination of COI rates varied on a case-by-case basis." *Vogt*, 2018 WL 1955425, at *6; *see also Bally*, 335 F.R.D. at 304. As such, the "major portion of the evidence on the claims for breach of contract, conversion, and declaratory judgment is capable of consideration on a class wide basis." *Vogt*, 2018 WL 1955425, at *6.

State Farm argues that individualized issues relating to its statute of limitations defense and other affirmative defenses will predominate. (Doc. 83 at 20–25.) State Farm's arguments regarding its statute of limitations defense preventing certification have been repeatedly rejected by the other courts in the class certification context. *See Bally*, 341 F.R.D. at 254; *McClure*, 341 F.R.D. at 253–54; *Page*, 2022 WL 406415, at *11. Courts have widely held "that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action as long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present." *Schramm v. JPMorgan Chase Bank, N.A.*, No. LA

CV09-09442 JAK (FFMx), 2011 WL 5034663, at *10 (C.D. Cal. Oct. 19, 2011) (quoting *In re Energy Sys. Equip. Leasing Sec. Litig.*, 642 F. Supp. 718, 752–53 (E.D.N.Y. 1986)). And State Farm's mere speculation that some claims may be barred by the statute of limitations or that others may be waived cannot defeat predominance given the legion of common legal and factual questions created because all class members share the same Policy and State Farm uniformly determined the COI Rates. *See Tyson*, 577 U.S. at 453 (noting that (b)(3) certification is proper where important common issues predominate "even though other important matters will have to be tried separately" such as "affirmative defenses").

Further, the possibility that a small percentage of the class members suffered no damages is also not a basis for concluding no predominance. Even where "hundreds of class members suffered no injury," class certification is still appropriate provided there is a "means for distributing the aggregate award only to injured class members." *Id.* at 462–66. Here, there is no concern that Witt's methodology will "mask[] the existence of class members who suffered no injury [where] [Witt] has calculated data specific to each class member's policy, and, moreover, identifies positive damages suffered by each class member." *Whitman*, 2021 WL 4264271, at *10–11.

Second, Toms needs to present a damages model that identifies damages that stem from State Farm's alleged wrongdoing and that are "susceptible of measurement across the

21

entire class." *Comcast*, 569 U.S. at 34–38. State Farm's primary attacks on Witt's damages models in its opposition to class certification mirror those in its motion to exclude Witt's expert report. (*Compare* Doc. 83 at 12–20, *with* Doc. 84 at 14–18.) These arguments are addressed above—and rejected—in the discussion of the *Daubert* motion. *See supra* Part III.A. For substantially the same reasons, the Court concludes Witt's proffered damages model suffices for class certification.

Toms's proposed damages model (i.e., Witt's models discussed above) can identify the amount each putative class member was allegedly overcharged in the manner discussed above. *See supra* Part III.A.2. And the proposed model is susceptible of measurement across the entire class because the substitute COI Charge rates calculated by Witt can and have been applied on a class-wide basis to calculate damages for each individual policy holder. (Doc. 60-21.) Every other court to examine the issue has also found that the Witt's damages model met the requirements of the predominance analysis for substantially the same reasons. *See, e.g.*, *Whitman*, 2021 WL 4264271, at *9–10; *Bally*, 335 F.R.D. at 299; *Vogt*, 2018 WL 1955425, at *5; *McClure*, 341 F.R.D. at 254. Thus, the Court concludes Witt's damages model satisfies Rule 23(b)(3)'s predominance requirements.

### b. Superiority

To satisfy Rule 23(b)(3)'s superiority requirement, Toms must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy." FED. R. CIV. P. 23(b)(3). State Farm does not challenge this requirement and this Court finds that a class action is the superior method for adjudicating the claims of the proposed class members here where the potential individual recovery is fairly low. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

Because Toms has satisfied Rule 23's requirements, the Court grants his class certification motion.[3]

## IV.    CONCLUSION

Accordingly, the following is **ORDERED**:

1.    Plaintiff's Motion for Class Certification (Doc. 60) is **GRANTED**.

2.    Defendant's Motion to Exclude Testimony of Scott Witt (Doc. 84) is **DENIED**.

---

[3] Toms makes a passing reference to Rule 23(c)(4) in a footnote, which he addresses in "the event the Court disagrees that damages can be measured class-wide." (Doc. 60 at 16 n.5.) Because the Court certifies the class under Rule 23(b)(3), therefore, it will not address certification under Rule 23(c)(4). And because the Court dismissed Toms's declaratory judgment claim in an earlier order,(Doc. 116), the Court will not address certification of the class under Rule 23(b)(2) either. *See Jaunich*, 2021 WL 5054461, at *4 n.4.

**ORDERED** in Tampa, Florida, on September 26, 2022.

_____   _____

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**